RECEIVED
DEC - 6 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JULIE LONGINO, ET AL. | CIVIL ACTION NO. 10-1680 |
| -vs- | JUDGE DRELL |
| UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is the Motion to Dismiss or in the Alternative, for Summary Judgment filed by the United States on behalf of the US Forest Service and the Department of Agriculture (Doc. 25).[1] All responses have been filed, and the matter is ready for disposition. For the following reasons, the motion will be DENIED.

I.   **Background**

On November 4, 2010, Plaintiffs, surviving family members of Billy Ray Longino, III, ("Mr. Longino") filed a Complaint alleging the United States[2] violated the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), by failing to take remedial action, warn the

---

[1] A review of the record shows Defendants have attached and made reference outside the pleadings in support of their motion. Also, in accordance with L.R. 56.1, they have provided a statement of material facts. (Doc. 25-3). Plaintiffs have likewise, in accordance with L.R. 56.2, presented evidence and included a statement of material facts in their opposition. (Docs. 31, 34). Therefore, this Court will look beyond the pleadings and will consider this matter as a motion for summary judgment under Fed. R. Civ. P 56.

[2] Under 28 U.S.C. § 1346(b), the United States is the proper defendant in an FTCA action involving the alleged negligence of a federal employee. (Doc. 25-1, at 1).

public, or take reasonable and necessary precautions to prevent harm from a low-hanging distribution line ("power line"). (Doc. 1).[3]

Plaintiffs allege on April 4, 2009 Mr. Longino was horseback riding with a group in Camp Livingston under a highline.(Doc. 25-4, at Ex. F, Ex. G). At the top of a steep incline, Mr. Longino's group came upon a low-hanging power line which could not be seen until the riders reached the peak of the hill. (Doc. 25-4, at Ex. G). Mr. Longino was ahead of most of the group, and turned around to inform them of the low-hanging power line. (Docs. 25-4, at Ex. F, Ex. G; 31-2, at Ex. N). His horse began "acting crazy" and "spinning and side-stepping towards the line." Id. Mr. Longino tried to control or dismount the horse, but was unable to do so before the horse lunged at the power line and electrocuted itself and Mr. Longino. Id. There were multiple witnesses to these events.

Plaintiffs further contend that firefighters and federal employees had earlier, on March 22, 2009, responded to a grass fire near Camp Livingston caused by the same low-hanging power line. (Docs. 25-1; 25-3, at ¶¶ 5, 6; 31). The United States did not place warnings, barricades, guards, or any other safeguards near or around the low-hanging power line after extinguishing the fire. (Doc. 31, at ¶ 4). Louisiana Department of Agriculture and Forestry Service Dispatcher Joni Edwards informed CLECO of the low-

---

[3] Central Louisiana Electric Company (CLECO) owns and operates the power line, and received a Special Use Permit from the United States Department of Agriculture and Forest Service on November 16, 1960 for fifty years. (Docs. 25-3, at ¶ 25; 25-4, at Ex. H). The permit grants CLECO a right of way for power lines and requires CLECO to keep the right of way clear of dead trees and snags to prevent fires. Id. CLECO is not a party to the present litigation because Plaintiffs filed suit against CLECO in the Ninth Judicial District Court, Rapides Parish, Docket No. 234888. (Doc. 25-4, at Ex. D). CLECO settled with Plaintiffs for an undisclosed amount. Id.

hanging power line. (Docs. 25-3, at ¶ 7; 23-4. at Ex. A). Approximately one week later, a CLECO representative called Ms. Edwards, and incorrectly told her the power line did not belong to CLECO. (Docs. 25-3, at ¶ 12; 23-4, at Ex. C).

Plaintiffs seek damages for mental anguish, loss of love and affection, loss of companionship, and funeral and burial expenses. (Doc. 1).[4] They also claim damages for decedent's pre-death mental and physical pain and fright. (Doc. 1). In addition, Julie Longino, decedent's grandmother, Austin Longino, his brother, and Britney Roy, his sister, came upon the accident scene shortly after the electrocution, and claim past and future compensatory damages for mental anguish and Lejeune[5] damages. (Doc. 1).

Defendant has denied liability and has asserted affirmative defenses. (Doc. 4). Defendant alleges it is not liable pursuant to the Louisiana Recreational Use Immunity Statute, La. R.S. 9:2795, and it is not liable based on the performance or omission of any discretionary function or duty. (Doc. 4).

In the current motion, Defendant argues this case should be dismissed because of four defenses: (1) the discretionary function exception to the FTCA deprives us of jurisdiction; (2) the Recreational Use Immunity Statute likewise does so; (3) decedent's death was not within the scope of Defendant's duty; and (4) the power line was in the care, custody, and control of CLECO. (Doc. 25-1).

---

[4] Decedent's surviving relatives are his father, mother, brother, sister, and grandmother. (Doc. 1).

[5] Lejuene damages are available for "mental pain and anguish claims arising out of injury to third persons." Lejeune v. Rayne Branch Hosp., 556 So. 2d 559, 570 (La. 1990). These damages are restricted to allow recovery for spouses, children, grandchildren, parents, siblings, and grandparents. La. Civ. Code Art. 2315.6.

## II. Law and Analysis

### A. Subject Matter Jurisdiction

As a preliminary matter, we must address general subject matter jurisdiction over this case. "[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte." Union Planters Bank Nat. Ass'n v. Salih, 369 F.3d 457, 460 (5th Cir. 2004). Although this issue was not briefed by the parties, based on the present facts, we must first determine whether we have subject matter jurisdiction over a claim for general premises liability under the FTCA.

The Fifth Circuit Court of Appeals has yet to rule on this issue, but District Courts in this Circuit are split.

In Cupit v. United States, 964 F.Supp. 1104 (W.D. La. 1997), Judge Little held a party cannot bring claims under the FTCA "against the United States to the extent that they are founded on general state law premises liability." Id. at 1112. Several district courts in the Fifth Circuit have relied on Cupit, and dismissed all claims of premises liability brought under the FTCA. Janice v. United States, 2008 WL 269530, at *6 (W.D. La. Jan. 29, 2008).

By contrast, in Jamison v. United States, 491 F.Supp.2d 608, 619 (W.D. La. 2007), Judge Melançon held "an action for negligence for general premises liability where the negligence of a specific [federal] employee has not been alleged is [not] absolutely barred under the Federal Tort Claims Act." Id. at 619. The court did not dismiss the general premises liability claim under the FTCA because it was persuaded by rulings in other circuit courts of appeals recognizing recovery for general premises liability under

the FTCA. Id. at 620 (citing authority from the Second, Sixth, Tenth, and Eleventh Circuit Courts of Appeal).

The most recent case in this split is Janice v. United States, 2008 WL 269530 (W.D. La. Jan. 29, 2008). In Janice, Judge Doherty concluded "a claim for negligence arising out of action taken or not taken in conjunction with a premises exists somewhere 'in between' the holdings of Cupit and Jamison." Id. at *6. The court created the following test to determine if a claim under the FTCA for general injury in conjunction with a premises could be asserted:

> The unreasonable risk or unreasonably dangerous condition must be either:
> (1) caused by the negligent or wrongful act or omission of a federal employee, or
> (2) the unreasonably dangerous condition was known to a government employee, yet he or she failed to act (i.e. a failure to warn of or correct the unreasonably dangerous condition).

Id.

We agree that Janice is correct. In this case, we find nothing in the Fifth Circuit to contradict what we adopt as the correct test to determine our subject matter jurisdiction.

Applying the Janice test, we find this Court does have subject matter jurisdiction because there are allegations the "unreasonable risk of harm or unreasonably dangerous condition," the low-hanging power line, "was known to a government employee, yet he or she failed to act." Janice, 2008 WL 269530, at *6. As noted above, Plaintiffs contend United States employees had actual knowledge of the low-hanging power line on March 22, 2009, when the grass fire occurred at Camp Livingston, and failed to take any remedial action. (Docs. 25-1; 25-3, at ¶¶ 5-7; 23-4; 31, at ¶ 4).

### B. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, "the amended rule contains no substantive change to the standard." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680, n.8 (5th Cir. 2011). An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### C. Federal Tort Claims Act

"Under the FTCA, Congress has . . . granted consent for the government to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998) (quoting 28 U.S.C. § 1346(b)). Put another way, under the FTCA, the Government may be liable "if a private person [ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." United States v. Olson, 546 U.S. 43, 44 (2005).

### D. Substantive Law

As mentioned above, Defendant seeks dismissal based on four theories, which we will address in turn.

#### 1. Discretionary Function Exception

Defendant alleges there is no mandatory statute, regulation, or formal policy requiring it to act beyond notifying CLECO of the low-hanging power line. (Doc. 25-1, at 23). The discretionary function exception to the FTCA provides liability shall not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Discretionary functions include those based on judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991); Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz by Berkovitz, 486 U.S. at 536. In addition, the discretionary function exception only applies to legislative and administrative decisions based on social, economic and political policy. Id. at 537. When properly applied, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Id.

Defendant claims there was "no mandated course of action" applicable to dealing with a hot, low-hanging power line which had already caused one fire. (Doc. 25-1, at 23). By contrast, Plaintiffs assert the <u>Incident Response Pocket Guide</u> (IRPG) published by the National Wildfire Coordinating Group provided an applicable standard for dealing with down power lines. (Doc. 31, at Ex. B).

**Down Power Lines**

- <u>Communicate</u>: Notify all responders of down electrical lines. Obtain radio check-back.
- <u>Identify</u>: Determine *entire* extent of hazard by visually tracking all lines, two poles in each direction, from the downed wire.
- <u>Isolate</u>: Flag area around down wire hazards; post guards.
- <u>Deny entry</u>: Delay firefighting actions until hazard identification and flagging is complete and/or confine actions to safe areas. . . .
- **Always treat downed wires as energized!**

(Doc. 31-2).

In conjunction with the IRPG, Plaintiffs refer to a deposition from Anthony Rivers, the assistant fire management officer at the time of the incident, who agreed the IRPG is "the Bible for firefighting." (Doc. 31, at Ex. E, p. 12, lines 20-21); <u>see also</u> (Doc. 31, at Ex. I, Deposition of Randy L. Blake, Fire Prevention Officer, p. 25, lines 16-19 (describing an "incident response guide" as "my Bible" for fires)).

Plaintiffs also urge further factual disputes for this issue by reference to deposition testimony from Lester Tisino, a forest fire management officer with the Forestry Service, who testified fire protocol requires the Incident Commander (IC) to return to the site daily until the fire is declared out. (Doc. 31, at Ex. F, p. 6, lines 8-18). This daily return requirement was arguably not followed in the present case. (Doc. 31, at Ex. H (failing to declare the fire out); Doc. 31, at Ex. I, p. 24, lines 12-19 (claiming

the State checked the fire area and no federal employee conducted daily returns despite federal ownership of the property at issue)). Based on Plaintiffs' extensive references, there is a genuine factual dispute about the existence of a policy requiring some form of action for down power lines, and, if so, the policy's requirements and whether its existence would preclude the exercise of judgment or choice. Testimony at trial will be required to resolve the issue.

### 2. *Recreational Use Immunity Statute*

Defendant also asserts the Louisiana Recreational Use Immunity Statute precludes Defendant's liability in the present case. (Doc. 25-1, at 11).[6] Louisiana R.S. 9:2791 and 9:2795 govern the limitation on liability for landowners of property used for recreational activities:

> Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
> (a) Extend any assurance that the premises are safe for any purposes.
> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
> (c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

La. R.S. 9:2795(B)(1)(a)-(c).

The purpose of the recreational use statute "is to encourage owners of land to make land and water areas available to the public for recreational purposes by

---

[6] The Recreational Use Immunity Statute has been applied to immunize the United States from claims under the FTCA where a similarly situated private party would also be immune from claims. Woods v. United States, 909 F.Supp. 437, 440-42 (W.D. La. 1995).

limiting their liability toward persons entering thereon for such purposes." 1975 La. Acts, No. 615, § 1. The statute defines recreational purposes to include horseback riding among other enumerated and unenumerated activities. La. R.S. 9:2795(A)(3). Based on this purpose, Louisiana courts use a three-prong test to determine whether recreational immunity applies.

> First, the land upon which the injury occurs must be undeveloped, nonresidential, and rural or semi-rural. Second, the injury itself must be the result of recreation that can be pursued in the "true outdoors." Third, the injury-causing instrumentality must be of the type normally encountered in the "true outdoors" and not of the type usually found in someone's backyard.

Naquin v. Louisiana Power & Light Co., 768 So.2d 605, 608 (La. App. 1 Cir. 2000) (internal citations and quotations omitted); see also Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287, 1290 (La. 1985).

Both parties failed to brief the three-prong test applied by Louisiana courts to determine the applicability of the Recreational Use Immunity Statute. One factor from this test is especially important as applied to the present facts: "the injury-causing instrumentality must be of the type normally encountered in the 'true outdoors' and not of the type usually found in someone's backyard." Naquin, 768 So.2d at 608 (internal citations and quotations omitted). There is a genuine factual dispute about whether a power line is normally encountered in the "true outdoors." Therefore, there is a genuine factual dispute about the applicability of the Recreational Use Immunity Statute to shield Defendant from liability.

### 3. *Duty of Care*

Defendant claims it did not have a duty to warn or protect against injury from the low-hanging power line because the low-hanging power line was an open and obvious danger. (Doc. 25-1, at 8, 19). "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Art. 2315. The owner of an immovable has a "duty to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence." Bross v. Chevron USA, Inc., 649 F.Supp. 2d 517, 522 (W.D. La. 2009); Socorro v. City of New Orleans, 579 So. 2d 931, 939 (La. 1991). "This duty does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable care or which are as obvious to the property owner as to a visitor." Price, 664 So.2d at 1277; see also Arabie v. Chevron USA, Inc., 688 F.Supp. 1111, 1116 (W.D. La. 1988).

There is a genuine factual dispute as to whether the danger from the hot power line was "open and obvious." Until Longino came in contact with the power line there was no way for anyone to know for certain whether the power line was energized. (Doc. 31-2, at Ex. N). Likewise, as we noted earlier, this line could not be observed until the party reached the hilltop, and then according to the claims it was too late.

### 4. *The Power Lines were in the Care, Custody, and Control of CLECO*

Defendant alleges the power lines were in the care, custody, and control of CLECO, and it acted to the fullest extent under the law when it notified CLECO of the low-hanging power line. (Doc. 25-1). A lessor warrants against vices or defects in a

11

thing, even if the defects arise after delivery, so long as the defects are not attributable to the fault of the lessee. La. Civ. Code 2696. Even if the parties agree the lessee will assume responsibility for the condition of the leased thing, this assumption is invalid if the lessor knew or should have known of the defect or received notice of the defect and failed to remedy it in a reasonable time. La. R.S. 9:3221.

There is a genuine factual dispute to resolve in determining whether Defendant had a duty to remedy the unreasonably dangerous condition created by the low-hanging energized power line. Defendant claims it did not have a duty to remedy the low-hanging power line because its employees were not qualified to "take any action regarding utility lines running through the forest." (Doc. 25-1, at 8). Defendant supports this proposition with the Louisiana Overhead Powerline Safety Act, which it asserts prohibits individuals or employees from performing a function on land when it is possible for a person to be placed within ten feet of a high voltage overhead line. La. R.S. 45:142.[7]

However, and in any event, Defendant reads 45:142 in isolation and fails to mention the exception to 45:142, which allows the commencement of work within ten feet of high voltage power lines if notice is sent to the owner or operator of the power line at least forty-eight hours before commencing work or if there is an emergency

---

[7] In FTCA cases, "[t]he Fifth Circuit has consistently held that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law." In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs), 668 F.3d 281, 288 (5th Cir. 2012).

situation, such as a fire. La. R.S. 45:143. Therefore, contrary to Defendant's assertion, the law did not prevent Defendant from fixing the power line, and there is a genuine factual dispute as to whether the low-hanging power line was solely under CLECO's care, custody, and control or whether Defendant had a duty and the ability to repair the condition after gaining actual knowledge of the condition on March 22, 2009.

### E. Conclusion

For the reasons detailed above, Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment will be denied.

SIGNED on this 6th day of December, 2012 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT